IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    Plaintiff,

and

CATHERINE COPELLO and ALLISON
KENNEDY,

    Plaintiffs-Intervenors,

v.

CUSTOM COMPANIES, INC., CUSTOM
EXECUTIVE GROUP, INC. and CDN
LOGISTICS,

    Defendants.

Case No. 02 C 3768
03 C 2293

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

The Equal Employment Opportunity Commission (hereinafter, the "EEOC") and Plaintiff-Interveners Catherine Copello and Allison Kennedy (hereinafter, the "Interveners") (collectively, the "Plaintiffs") filed suit against Defendants Custom Companies, Inc. (hereinafter, "Custom"), Custom Executive Group (hereinafter, "CEG"), and CDN Logistics (hereinafter, "CDNL") (collectively, the "Defendants") alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000 et seq. Together, the EEOC and the Interveners allege that Defendants subjected a class of women to a hostile environment of sexual harassment. The EEOC alleges that Defendants

retaliated against Kimberly Fritkin and Corinne Miller in violation of Title VII. Individuals Catherine Copello and Allison Kennedy also allege retaliation and sex discrimination.

CDNL was added as a defendant by the EEOC in a second amended complaint because the EEOC alleges that it is the "same corporation" as Custom. CDNL moves for summary judgment on the basis that it is not the same corporation as Custom. For the reasons stated herein, CDNL's Motion for Summary Judgment **is granted.**

## I. BACKGROUND

The extensive factual background of this case is set forth in this Court's previous summary judgment opinion. The Court assumes the reader's familiarity with the earlier decision and attempts to recite only those facts relevant to the current Motion for Summary Judgment, and those needed for context.

### A. Procedural Background

On May 28, 2002, the EEOC initiated the above-captioned case, No. 02 C 3768, on behalf of Copello and a class of former Custom employees. On April 2, 2003, the EEOC initiated the above-captioned case, No. 03 C 2293, on half of Corinne Miller and Kimberly Fritkin. On July 23, 2004, the EEOC filed its Second Amended Complaint in both of the above cases, removing Custom Distribution Network, Inc. as a defendant and adding CDNL. The EEOC gave two reasons for adding CDNL: (1) that CDNL and Custom

are a "single employer" under Title VII; and that (2) CDNL was mistakenly named as Custom Distribution Network in the original complaint.

### B. Factual Background

#### 1. The Companies

Custom is located at 317 West Lake St. in Northlake, Illinois. Perry Mandera ("Mandera") is Custom's sole shareholder and officer. Custom is a full-service transportation company that brokers freight to various outside shippers. It does not actually move freight. Through its vendors, it offers local cartage, airfreight, truckload and less than truckload transportation services.

CDNL is an Illinois corporation incorporated on May 15, 1998. CDNL is a transportation company licensed as a motor carrier by the Department of Transportation and engaged in the business of providing local and long distance transportation services to its customers. Robert Durkin ("Durkin") is the sole director, president and secretary of CDNL. Durkin and Thomas Kolzow ("Kolzow") are CDNL's sole shareholders. Kolzow is also CDNL's Chief Operating Officer.

CDNL is also located at 317 West Lake St. in Northlake, Illinois. CDNL has its own office space and a separate entrance from Custom. Both companies lease their office space through The Center Point Properties. Both companies conduct separate, regular

annual and interim meetings of their shareholders. The minutes are kept and maintained at the companies' respective offices.

### 2. *The Relationship between Custom and CDNL*

CDNL is one of Custom's vendors. It provides local cartage and truckload services to Custom. The Custom sales representatives sell truckload services on behalf of Custom. The services are then brokered to various vendors, including CDNL. CDNL has additional customers aside from Custom. The percentage of Custom's revenues generated from CDNL services is less than 25%. The percentage of CDNL revenues generated from providing services to Custom is less than 50%. In May 2001, CDNL took over local cartage, providing service for local freight traffic, services for Custom. Prior to May 2001, Custom did its local cartage business itself. Plaintiffs allege that CDNL employs the same individuals for its local cartage as Custom did.

Plaintiffs argue that Mandera provided all of the start up capital to Durkin in order to form CDNL. Further, Kolzow and Marc Inman, former Custom employees, were involved in the formation of CDNL.

### 3. *Management of the Companies*

CDNL leases its driver and dock employees from Transportation Personnel Services. Prior to using Transportation Personnel Services, it leased its employees from Innovative Benefits Concepts. Transportation Personnel Services is responsible for

payment and discipline of its employees, as well as performing human resources functions.

Custom employs Terry Klonowski as its Vice President of Human Resources. Custom pays its own employees, and offers its own benefits and 401(k) package.

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

### B. Piercing the Corporate Veil

In *Papa v. Katy Industries*, 166 F.3d 937 (7th Cir. 1999) the Seventh Circuit outlined the proper test for determining whether companies are sufficiently affiliated to warrant treating them as a single employer under Title VII. The Court noted that the purpose of the standard is to spare very small firms from the potentially crushing expense of mastering the intricacies of the anti-discrimination laws, establishing procedures to ensure compliance, and defending against suits when efforts at compliance

fail. *Id.* at 940. The standard does not allow for treating any affiliated group as a single employer. *Id.* Although the Court established three situations in which the policy behind the exemption of a small employer is vitiated by the presence of an affiliated corporation, by agreement of the parties, only one exemption potentially applies in this case.

A court will treat affiliated companies as one for purposes of the anti-discrimination laws where the conditions are present for "piercing the [corporate] veil," traditionally used to allow a creditor to sue a parent or other affiliate and hold the affiliate liable for the employer's debt. *Id.* at 940-41. If the affiliated companies neglect corporate formalities, hold out the parent as the real party with whom one is dealing, the parent may be held liable for torts created by the anti-discrimination laws. The basic principle is that the affiliate forfeits its limited liability only if it acts to forfeit it by failing to comply with statutory conditions of corporate status, or misleading creditors of an affiliate. *Id.* at 941.

A corporate entity will be disregarded and the veil of limited liability pierced when two requirements are met: (1) there must be such a unity of interest and ownership such that the separate personalities of each corporation no longer exist; and, (2) the circumstances must be such that adherence to the fiction of

separate corporate existence would sanction a fraud or promote injustice.

In determining whether a corporation is so controlled by another to justify disregarding their separate identities, courts focus on four factors: (1) the failure to maintain adequate corporate records or to comply with corporate formalities; (2) the commingling of funds or assets; (3) undercapitalization; and (4) one corporation treating the assets of another corporation as its own. *Jackowski v. Seoco, Inc. Northern*, No. 98 C. 50337, 2001 WL 709485 (N.D. Ill. June 22, 2001).

### 1. *Corporate Formalities*

Plaintiffs argue that Custom and CDNL failed to observe corporate formalities because Custom executives played a role in the formation of CDNL. Specifically, Plaintiffs allege that CDNL used an attorney that has appeared on behalf of Custom in this case. The attorney is also a part-owner with Durkin in an employment company that leases employees to CDNL. Further, Plaintiffs allege that when CDNL took over the local cartage business from Custom, it adopted Mandera's work and leasing practices without engaging in competitive bidding. Finally, Plaintiffs point to a Custom e-mail listing Kolzow as an "Executive Board Member" and years later another email informing him of an Executive Board meeting.

Plaintiffs present no evidence that Custom and CDNL neglected corporate formalities or that adhering to the separateness of Custom and CDNL would work an injustice on Plaintiffs. *LaBouve v. The Boeing Co.*, 387 F. Supp. 2d 845, 853 (N.D. Ill. 2005). Rather, CDNL presented uncontroverted evidence that it remained a separate and distinct legal entity from Custom. Custom and CDNL do not have common stockholders, officers or directors. *Hystro Products, Inc. V. MNP Corp.*, 18 F.3d 1384, 1389 (N.D. Ill. 1994)("Stock control and the existence of common officers and directors are generally prerequisites to the piercing of the corporate veil although factors alone will not suffice."). Although they may have employed the same outside attorney, that does not suffice to show neglect of corporate formalities. *See Papa*, 166 F.3d at 942.

### 2. *Commingling of Funds or Assets and Undercapitalization*

Plaintiffs argue that piercing the corporate veil is appropriate because Custom and CDNL have shared personnel and assets and Custom has provided working capital to CDNL. Plaintiffs point to statements in the financial statements discussing that Custom provided "management services and working capital" to CDNL. The management services relate to the non-enforcement of Custom's non-competition agreements with employees that left to work for CDNL. Additionally, Plaintiffs allege that while Mark Inman was responsible for the truck operations at CDNL, he also received payments from CEG. The working capital consists of a loan made by

Mandera to Durkin. Additionally, Custom assisted CDNL in entering a banking agreement to establish a $500,000 line of credit to operate its business. The line was secured by Custom, as a result of an agreement based on a time-lag concerning accounts receivables. Plaintiffs also allege that a common operation relationship is evidenced by Custom and CDNL's shared use of personnel. Plaintiffs allege that Klonowski assisted CDNL with requesting job postings on internet sites and complying with workman's compensation regulations.

Plaintiffs' allegations, taken as true, do not establish the commingling of assets and personnel or undercapitalization required to pierce the corporate veil. *Papa*, 166 F.3d at 943 ("The corporate veil is pierced, when it is pierced, not because the corporate group is integrated . . . but (in the most common case) because it has neglected forms intended to protect creditors from being confused about whom they can look to for payments of their claims."). The loan and line of credit constitute two business transactions between affiliated companies. *Id.* at 942 (holding that forms of contractual integration are not sufficient to pierce corporate veil). The companies maintain their own bank accounts, and are each responsible for the payment of their separate employees. *See Hystro Products, Inc.*, 18 F.3d at 1389. Further, the alleged sharing of personnel consists of a few menial tasks and employees that left one company to work at another without

enforcement of a non-competition agreement. As already stated, Custom has its own human resources department, made its own hiring decisions and created its own personnel policies separate from CDNL. *See LaBouve*, 387 F. Supp. 2d at 852.

### III. CONCLUSION

As discussed above, the conditions for piercing the corporate veil do not exist in this case. Thus, CDNL's Motion for Summary Judgment **is granted**.

**IT IS SO ORDERED.**

*[signature]*

Harry D. Leinenweber, Judge
United States District Court

Dated: *October 26, 2006*